**Rodney R. HAYMES,
Plaintiff-Appellee,**

v.

**Paul J. REGAN, Commissioner, New York State Parole Board; Parole Board of July 29, 1974, Defendants-Appellants.**

**No. 383, Docket 75–2096.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 8, 1975.

Decided Oct. 29, 1975.

Jane E. Bloom, Poughkeepsie, N. Y. (Mid-Hudson Valley Legal Services Project), for plaintiff-appellee.

David L. Birch, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellants.

Before KAUFMAN, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

We are once again called upon to consider the constraints that Fourteenth Amendment guarantees may impose upon the operation of state parole systems. Specifically, we must decide whether the New York State Parole Board must disclose the release criteria observed in its parole decisions if, in every instance where parole is denied, the inmate is given a statement of specific reasons and facts upon which that decision was based. We hold that such disclosure is not, at this time, required as part of the minimum due process to be accorded the parole applicant.

On August 10, 1971, following his conviction for the crime of manslaughter in the first degree, Rodney Haymes was sentenced to an indeterminate term not to exceed ten years. He is presently imprisoned in the Attica Correctional Facility. On July 29, 1974, Haymes appeared before three members of the New York State Board of Parole; on the following day he received a written parole denial slip from the Board stating "Held to 7/75 Board with improved record."[1]

On September 3, 1974, Haymes filed his *pro se* civil rights complaint in which he challenged on federal due process and state statutory grounds the adequacy of various procedures employed by the Parole Board, and sought release from custody. An amended complaint, drafted with the aid of counsel and filed on March 31, 1975, requested injunctive and declaratory relief rather than release from custody. Judge Knapp decided that jurisdiction properly arose pursuant to 28 U.S.C. § 1343(4), as implemented by 42 U.S.C. § 1983, *United States ex rel. Johnson v. Chairman, N.Y. State Board of Parole,* 500 F.2d 925, 926 (2d Cir.), *vacated and remanded as moot sub nom. Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), and that the exhaustion of state remedies was therefore not required. Since it is the manner of parole decision-making, not its outcome, that is challenged, appellant does not present a complaint of the sort in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), for which habeas corpus would be appropriate. As in *Johnson,* the Parole Board does not dispute this characterization.[2]

On the substantive claims presented by Haymes's amended complaint, the court below ordered the Board to furnish a statement of the grounds and essential facts upon which its July 29, 1974 decision to deny Haymes parole was based, and

> 2. . . . [to] disclose in writing the release criteria observed by them on July 29, 1974, and the factors considered by them in determining whether these criteria were met with respect to plaintiff Haymes.

(Order of May 27, 1975).[3]

The Board contests only the portion of Judge Knapp's order that requires the disclosure of criteria for parole release consideration, as set forth above. It asserts that the district judge's reliance upon language in this Court's recent decision in *United States ex rel. Johnson, supra,* 500 F.2d at 930, in imposing that requirement, was misplaced because it

---

1. Haymes was again denied parole after a hearing on July 15, 1975, and received a written parole denial slip stating "Held 9 months for improved record."

2. *But see Baskins v. Moore,* 362 F.Supp. 187 (D.S.C.1973).

3. On September 2, 1975, a panel of this Court granted an application by appellants for a stay of the District Court's order pending appeal. The court below reserved decision on Haymes's other substantive claims and motion for class action status.

was dicta. We agree with the Board's interpretation of *Johnson*. Our brother Mansfield, writing for the majority, observed that until the Board discloses both release criteria and the grounds for denial of parole, the prisoner, community, and reviewing courts "are left in the dark" as to whether permissible criteria were rationally applied and relevant factors considered. 500 F.2d at 930. He went on to express the hope that a body of rules, principles and precedent would one day be established. *Id.* at 933. But, the majority held only that due process required the Board to furnish state prisoners with a written statement of reasons when release on parole is denied. *Id.* at 934.

Although we agree with the view expressed in *Johnson* that a policy of disclosing release criteria would be desirable, and could aid in the review of parole decisions, we cannot conclude at this time that the failure to follow such a policy is a violation of fundamental due process.[4]

 Our conclusion is dictated by consideration of the balance between the inmate's interest in the proceedings and the "need for and usefulness of the particular safeguard in the given circumstances . . . ." *Frost v. Weinberger*, 515 F.2d 57, 66 (2d Cir. 1975). *See also Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The inmate's stake in the Board's decision to grant or deny him parole is, of course, significant. It is equally clear that the Parole Board is invested with vast discretionary authority in deciding whether and when parole release is appropriate. The controlling statutory standard, N.Y. Correction Law § 213, provides merely that discretionary release on parole shall be granted only if the Board is of the opinion that, if released, the prisoner will "live and remain at liberty without violating the law" and that his release "is not incompatible with the welfare of society."[5]

The task of the reviewing body thus might well be eased by the formulation and promulgation of more precise rules and criteria. *See generally* Friendly, The Federal Administrative Agencies: The Need for Better Definition of Standards, 75 Harv.L.Rev. 863 (1962). And we recognize that any direct burden which might be imposed on the Board in disclosing its release criteria would be less than oppressive.[6]

 Nonetheless, the "need for and usefulness" of such disclosure are diminished to a critical degree where a specific statement of reasons and underlying facts is furnished to every prisoner denied parole. In this connection, we note that § 214 of the New York Correction Law was recently amended to require the Board to inform each prisoner denied parole of "the facts and reason or reasons for such denial."[7] This require-

---

4. In *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974), *aff'ing in part*, 371 F.Supp. 1246 (D.C.D.C. 1973), the District Court had ordered the Board, *inter alia*, to submit "proposed procedures for conveying to prisoners reasonably comprehensive explanatory guidance as to the criteria to be considered in passing upon applications for parole." Because the Board had already begun to implement such procedures on a regional basis, *see* note 9 *infra*, it did not appeal from that portion of the order. The Court of Appeals, consequently, did not decide whether the release of such criteria was required by the Constitution. 511 F.2d at 1272, 1281.

5. *See also* New York Correction Law § 214(4), which provides in pertinent part that "no prisoner shall be released on parole unless the board is satisfied that he will be suitably employed in self-sustaining employment if so released."

6. Although the Board apparently observes certain release criteria in practice, it has not published them. *See United States ex rel. Johnson, supra*, 500 F.2d at 930 n. 4; Report on New York Parole by Citizens Inquiry on Parole and Criminal Justice Inc. 92–117 (1973).

7. New York Correction Law § 214 was amended on June 3, 1975, by the addition of subdivision six (effective sixty days thereafter):

 If, after appearance before the board pursuant to subdivision four of this section, the prisoner is denied release on parole, the board shall inform such prisoner, in writing

ment, if properly observed, should serve to protect the inmate from arbitrary and capricious decisions or actions grounded upon impermissible considerations. *United States ex rel. Johnson, supra,* 500 F.2d at 929. *See also Cardaropoli v. Norton,* 523 F.2d 990, 998, 999 (2d Cir. 1975). The compulsion upon the decisionmaker to set forth the reasons in each case of denial of parole, with some specificity, "promotes thought by the decider" and impels him to "cover the relevant points." Frankel, *Criminal Sentences* 40–41 (1973).

■ To satisfy fundamental due process requirements and render unnecessary the disclosure of release criteria, the statement of reasons should enable the reviewing body to determine whether parole has been denied for an impermissible reason, or indeed, for no reason at all. Although a trial-type hearing and detailed findings of fact are not required, such a statement must evince the Board's consideration of relevant factors. *United States ex rel. Johnson, supra,* 500 F.2d at 934. Moreover, it must provide the inmate with both the grounds for decision to deny him parole, and the essential facts from which the Board's inferences have been drawn. *Id.* Judge Knapp correctly found that vague phrases such as the one here given Haymes do not meet the requirements of *Johnson.*

■ Such meaningful compliance with N.Y. Correction Law § 214 will enable a reviewing body to determine whether appropriate and rational criteria have been followed by the Board of Parole. We conclude, therefore, that the

provision of a long list of factors considered by the Board, unweighted as to their relative significance, would not at this time appreciably enhance the protection accorded the parole applicant or add to the fairness of the proceeding.[8] Unless and until the statements of specific facts and reasons for denial of parole actually given pursuant to N.Y. Correction Law § 214 prove inadequate to protect inmates in the parole decision-making process, we will not compel the Board to reveal its release criteria.[9]

Accordingly, the order of the District Court of May 27, 1975, as modified in accordance with this opinion, is affirmed.

---

and within two weeks of such appearance, of the facts and reason or reasons for such denial.

Ch. 131, Laws of New York (1975). *See also Solari v. Vincent,* 77 Misc.2d 54, 353 N.Y.S.2d 639 (Sup.Ct. Dutchess Cty. 1974), *aff'd,* 46 A.D.2d 453, 363 N.Y.S.2d 332 (App.Div. 2d Dept., 1975) (Board must state reasons for denial of parole); *Cummings v. Regan,* 76 Misc.2d 137, 350 N.Y.S.2d 119 (Sup.Ct. Erie Cty. 1973), *aff'd* 45 A.D.2d 222, 357 N.Y.S.2d 260 (App.Div. 4th Dept., 1974) ("meaningful" statement of reasons required).

8. The question of what process is due a state prisoner denied parole is pending before the Supreme Court in *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *cert. granted* 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 664 (1975).

9. We do, however, urge the Board to consider the feasibility of formulating and disclosing release criteria employed in its decisions to grant or deny parole. We note in this regard the recent experience of the United States Parole Board in promulgation of systematized guidelines for parole release consideration, 28 C.F.R. §§ 2.19, 2.20 (1975).