**Ernest CORALLUZZO, Plaintiff,**

v.

**NEW YORK STATE PAROLE BOARD and Members of the New York State Parole Board, Individually and in their official capacity, Defendants.**

**No. Civ–76–81.**

United States District Court, W. D. New York.

Aug. 6, 1976.

Motion to Alter or Amend Oct. 6, 1976.

---

**3.** The primary object of the Confrontation Clause was to prevent depositions or ex parte statements being used against the accused in lieu of the witness' personal appearance with the concomitant right of the defendant to cross-examine the witness in the presence of the jury which is to weigh his credibility. *Bar-* *ber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). And cf. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Petitioner wholly fails to indicate wherein and in what respect he was legally prejudiced by the failure of the victim to testify.

594

Philip B. Abramowitz, Buffalo, N. Y., for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City (Lauren R. Wixson, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

On February 1, 1975, plaintiff was committed to the custody of the New York State Department of Corrections for an indeterminate term of up to fifteen years under N. Y. Penal Law § 70.00, for a violation of the New York Penal Law. An inmate subject to such an indeterminate sentence must meet with the New York State Parole Board within nine to twelve months from the date his sentence commenced and, at that time, the Board " . . . shall make a determination as to the minimum period of imprisonment to be served prior to parole consideration." N. Y. Correction Law § 212(2).

The plaintiff met with the Board on January 15, 1976 and shortly thereafter was informed by form notice dated January 15, 1976 that his minimum period of incarceration [hereinafter MPI] had been set at five years and that he would appear before the Parole Board in February 1980 for release consideration. No reasons were given to him for setting his MPI on the form.[1]

The plaintiff argues that the Board's determination was deficient in that (1) no notice was given on which basis or evidence the Board would rely to deny parole; (2) plaintiff was not given an opportunity to view or examine the evidence relied upon by the Board or to cross-examine those who gave that evidence or to offer rebuttal evidence; (3) that plaintiff was secretly classified a member of organized crime and not allowed to confront that fact or evidence for its basis;[2] (4) that the Board's decision was not made on the basis of sufficient standards to provide for a fair and equitable and thoughtful decision or to allow the reviewing court a proper basis for review; and finally (5) that the Board acted arbitrarily, capriciously and unlawfully in denying plaintiff's parole or reconsideration for five years.

The plaintiff seeks a declaratory judgment under 42 U.S.C. § 1983 to the effect that the Parole Board's consideration for release was conducted in violation of the plaintiff's rights under the fifth and fourteenth amendments, and an order directing the defendants to reconsider him for release in a proper manner.

The defendants argue that since the MPI hearing is only to set a tentative date for parole consideration, the petitioner does not have sufficient interest at stake to

1. On March 3, 1976, twelve days after the commencement of this action, another "Minimum Sentence Notice" was tendered to the plaintiff. This second form notice contains no blanks in which the Board can indicate its reasons for the setting of MPI, but the March 3, 1976 notice did indicate the reasons for the decision on the reverse side.

The defendants contend that the reasons contained on the second form were also orally given at the end of the MPI hearing. (Answer,

¶ 4). The transcript of that hearing, however, does conclude with reasons for the five-year "set off" but it does not appear that the plaintiff was in the room at that time.

2. By an order dated September 12, 1975, a state judge directed that allegations indicating the plaintiff had connections with organized crime be stricken from the plaintiff's probation report. People v. Coralluzzo, Ind. # 3247/1973 (Bronx County Supreme Court, September 12, 1975).

trigger due process rights. Parolees facing parole revocation are entitled to due process safeguards. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Prospective parolees also have due process rights. *United States ex rel. Johnson v. Chairman,* 500 F.2d 925 (2d Cir.), *vacated and remanded with order to dismiss as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). The defendants argue that since release cannot result directly from the MPI hearing, no due process safeguards should be required. However, the fact that immediate release cannot result is only one aspect in considering the case. In areas such as these, this rule is recognized:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg v. Kelly,* 397 U.S. 254 at 262, 90 S.Ct. 1011 at 1017, 25 L.Ed.2d 287 (1970).

Quoted in *United States ex rel. Johnson v. Chairman, supra,* at 928–29.

When faced with the argument that the MPI hearing was part of the judicial sentencing procedure for the purposes of representation by counsel, the Second Circuit commented:

> The purpose of the Board interview [at the MPI hearing] is to ascertain an inmate's background, to determine the inmate's needs in terms of correctional treatment, to explain to him what is expected of him before considering his release on parole, and to set a tentative date for considering his release on parole. In effect, then, the Board proceeding in question here is very much like an inter-

view to schedule, tentatively and subject to change, a hearing for parole release. As such, in our view, it is an integral part of the parole release process, and hence our decision denying the right to counsel in parole release hearings controls the instant case.

*Walker v. Oswald,* 449 F.2d 481, 484 (2d Cir. 1971).

The Board can release an inmate sentenced to an indeterminate term with no minimum after one year's incarceration. Thus, by statute, the MPI hearing (held after nine to twelve months incarceration) *may* result in scheduling a parole release hearing' and a grant of parole within a matter of days after the MPI hearing. One of the alternatives available to the Board at a regular parole release hearing, when to review an inmate for parole consideration, is the major purpose of the MPI hearing. This is a critical decision to the inmate; *e. g.,* in 1972 75% of the inmates appearing before the New York Parole Board were released. *United States ex rel. Johnson v. Chairman, supra,* at 928. The burden upon the state in providing notice of reasons for setting the date for the next hearing is minimal. Other due process requirements such as reviewing files and cross-examining sources of information become more onerous.

This court agrees with the plaintiff that the MPI hearing is similar enough to the parole release hearing to require that reason be given for setting of the date this inmate will again meet with the Board. However, the court declines to rule that other due process requirements are necessary for such hearings. *See Haymes v. Regan,* 525 F.2d 540 (2d Cir. 1975).[3]

As we noted above, the Board did provide notice of reasons for setting of a five-year term of minimum imprisonment, but only after it had provided notice of the

---

**3.** The court notes, however, that the recent Second Circuit opinion in *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, 1976, requires that a parolee be given access to the actual documents used against him at a parole revocation hearing, absent a showing of good cause

for keeping the information secret. The court's decision in this case, holding that the MPI hearing is similar to a regular parole hearing, requires the same disclosure, and the defendants are directed to make the actual evidence against the plaintiff available for his inspection.

five-year "set off" without reasons, and only after this suit had been filed. Under these circumstances, the court will not consider whether such late notice of reasons was a proper basis for denying the plaintiff relief. An inmate should not be required to sue the Board in this court before reasons are provided. To even consider this late notice would encourage such a belief and practice by the defendants. A major rationale for the reasons' requirement is defeated by the failure to communicate those reasons to the inmate promptly. The court will not rule on the question of whether the reasons for the five-year "set off" contained in the second notice meet the requirement of *United States ex rel. Johnson v. Chairman, supra.*

In addition, the court agrees with the plaintiff's argument that a requirement that reasons be given may alter the type of hearing the Board holds. *See United States ex rel. Johnson v. Chairman, supra,* at 931: "A reasons requirement 'promotes thought by the decider,' and compels him 'to cover the relevant points' and 'eschew irrelevancies.' "

██ The court directs the Parole Board to hold another MPI hearing. At this rehearing, the Board must base its decision on all relevant factors and furnish the inmate with both the grounds for the decision (*e. g.,* that in its view the prisoner would, if released before a certain date, probably engage in criminal activity), and the essential facts upon which the Board's inferences are based (*e. g.,* the prisoner's long record, prior experience on parole, lack of a parole plan, lack of employment skills or of prospective employment and housing, and his drug addiction). *United States ex rel. Johnson v. Chairman, supra,* at 934.[4] This hearing is to take place within sixty days from this order. The plaintiff's other requests for relief are denied.

██ The defendants had moved for dismissal because the plaintiff had not served the Chairman or any of the members of the Parole Board. The summons and complaint have since been properly served upon the attorney for the Board in Albany. The motion to dismiss because of improper service and because of failure to state a claim upon which relief can be granted is denied.

So ordered.

## MOTION TO ALTER OR AMEND

On August 6, 1976, this court directed the New York State Parole Board to hold another MPI (minimum period of incarceration) hearing for the plaintiff, Ernest Coralluzzo. In Footnote 3 of the August 6, 1976 opinion, the court noted that, because of the similarity of the MPI hearing with the parole release and parole revocation hearings, the defendants were to make the actual evidence against the plaintiff available for his inspection in accordance with *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, at 1161–1163 (2d Cir. 1976).

Subsequently, the defendants moved to alter or amend the August 6 decision and order. Defendants urge that the court's directive in footnote 3, that the actual evidence against the plaintiff be disclosed to him, should not be applied to parole release and MPI proceedings.

The court now affirms its decision of August 6, 1976. In addition to the other requirements of that order, the defendants are directed to disclose to the plaintiff all of the evidence, in unabridged form, which may be considered against him, absent a showing of good cause for keeping the information secret.

The courts are split with respect to whether or not due process applies to parole release proceedings. Those holding that due process does apply include: *United States ex rel. Johnson v. Chairman,* 500 F.2d 925 (2d Cir. 1974); *Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir. 1975); *Haymes v. Regan,* 525 F.2d 540 (2d Cir. 1975); *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *vacated as moot,* 423 U.S. 147, 96

---

4. It appears that the Board is also required to do this by court interpretation of the statute.

*See Festus v. Regan,* 50 A.D.2d 1084, 376 N.Y. S.2d 56 (4th Dept. 1975).

S.Ct. 347, 46 L.Ed.2d 350 (1975); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975); *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974).

The contrary view is expressed in *Brown v. Lundgren,* 528 F.2d 1050 (5th Cir. 1976), and *Scott v. Kentucky Board of Parole* (6th Cir., unreported), *cert. granted,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975).

The court's decision of August 6, 1976 makes it clear that an inmate facing an MPI determination does have sufficient interest at stake so as to require that minimal due process safeguards apply to the MPI proceeding. The question now before the court is whether mandatory inspection of the file by the plaintiff would so appreciably enhance the protection accorded the inmate or add to the fairness of the MPI proceeding as to be required by the due process clause of the fourteenth amendment. *See Haymes v. Regan, supra,* at 544.

The courts are also divided with respect to the issue of whether a parole board is constitutionally required to allow an inmate to inspect his prison and parole file prior to a parole release proceeding.

At least three federal courts have held that inspection is constitutionally mandated: *Franklin v. Shields,* 399 F.Supp. 309, 316–17 (W.D.Va.1975), *accord, Williams v. Virginia Probation & Parole Board,* 401 F.Supp. 1371 (W.D.Va.1975); *Cooley v. Sigler,* 381 F.Supp. 441, 443 (D.Minn.1974); *Childs v. United States Board of Parole,* 371 F.Supp. 1246 (D.D.C.1973), *aff'd in part,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974).

Three other courts have held that, while inspection may be a beneficial addition to the hearing procedure, it is not mandated by the fourteenth amendment: *La Bonte v. Gates,* 406 F.Supp. 1227, 1232 (D.Conn. 1976); *Fisher v. United States,* 382 F.Supp. 241 (D.Conn.1974); *Wiley v. United States Board of Parole,* 380 F.Supp. 1194 (M.D.Pa. 1974); *Barradale v. United States Board of Paroles & Pardons,* 362 F.Supp. 338 (M.D. Pa.1973).

In *Fisher v. United States, supra,* the court found that disclosure to the inmate of the contents of his parole file is not required by the due process clause since such disclosure is not required of courts at sentencing. 382 F.Supp. at 243.

The Second Circuit, however, has recognized that the MPI hearing is an integral part of the *parole release process* rather than a part of the judicial sentencing procedure. *Walker v. Oswald,* 449 F.2d 481, 484 (2d Cir. 1971). *See also, People ex rel. Johnson v. Montanye,* 42 A.D.2d 1041, 348 N.Y.S.2d 617 (4th Dept. 1973).

The District of Columbia Circuit has also distinguished parole consideration from sentencing:

> Parole consideration comes at a different stage of the over-all system, and is by a Board possessing broad but legislatively undefined discretion except to grant or deny parole. For the Board to exercise its discretion fairly and knowledgeably within the purposes of the system, rational means—rational considerations—must attend its functioning.

*Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270, 1284 (1974).

In determining the due process standards applicable here, the inmate's interest in insuring that an MPI decision be appropriate and fair must be balanced against the governmental interest in the orderly administration of the prison system. As the Second Circuit has recognized:

> The required degree of procedural safeguards varies directly with the importance of the private interest affected and the need for and usefulness of the particular safeguard in the given circumstances and inversely with the burden and any other adverse consequences of affording it. Friendly, "Some Kind of Hearing", 123 U.Pa.L.Rev. 1267, 1278 (1975); *Frost v. Weinberger,* 515 F.2d 57, 66 (2d Cir. 1975).

*Cardaropoli v. Norton, supra,* at 996.

The inmate's private interest is great since the parole board's MPI decision deter-

mines the date at which the inmate will first become *eligible* for release on parole.[1]

The particular safeguard which the court now mandates—inspection by the inmate of his file—is especially appropriate in cases such as this where innuendoes or allegations of the inmate's involvement with organized crime are present.[2]

Considerable documentation exists that inmates' prison files frequently contain erroneous information and that, in particular, serious errors are often made by the Government in determining that an inmate has links with organized crime. *Cardaropoli, supra,* at 997; *Masiello v. Norton,* 364 F.Supp. 1133 (D.Conn.1973); *Franklin v. Shields, supra; La Bonte v. Gates, supra.*

As recognized in the court's August 6 decision, the burden to the Government of disclosing such information would be minimal. Any possible "adverse consequences" could be avoided by the Government's showing good cause for keeping the information secret.

The requirement that actual evidence be disclosed to an inmate at the MPI proceeding is a logical and natural extension of the rationale supporting parole cases decided in this circuit since *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Morrissey* held that disclosure to the parolee of the evidence against him was among the minimum due process requirements applicable at a parole revocation hearing. *Morrissey, supra,* at 489, 92 S.Ct. 2593. *United States ex rel. Johnson v. Chairman, supra,* and *Haymes v. Regan, supra,* recognized that prospective parolees also have certain due process rights.

The Second Circuit's recent decision in *United States ex rel. Carson v. Taylor, supra,* extends the application of *Morrissey* to require that the parolee have access to the actual documents used against him at a parole revocation hearing. *Carson, supra,* at 1161. The court reasoned that this was the only way to avoid "exposing a parolee to a subitantial risk of recommitment upon the basis of erroneous impressions or conclusions grounded on innuendo or exaggeration, as distinguished from 'verified facts,' . . . ." *Carson, supra,* at 1161. The court concluded that because of the risks of distortion or subtle changes of meaning, a "summary of documents containing incriminating information that may be disputed by the parolee does not constitute an adequate substitute for the document itself. . ." *Carson, supra,* at 1161.

In *Shepard v. United States Board of Parole,* 541 F.2d 322, 1976, the Second Circuit decided that a parole violation detainer should not have been allowed to stand "in the absence of basic elements of rudimentary due process":

We think it necessary that at some point before the Commission decides not to withdraw the parolee's detainer, it disclose to him in unabridged form all the evidence which may be considered against him, except to the extent that the Commission meets the heavy burden of establishing good cause for its nondisclosure. Cf. *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, 1161 (2d Cir. 1976). Moreover, the Commission must effect

---

1. In another context, the Second Circuit has noted the significance of one's being deprived even of *eligibility* for certain benefits:

The serious adverse consequences which flow from the Special Offender designation [often related to alleged contacts with organized crime] are found, most significantly, in the total or partial loss of *eligibility* for substantial benefits normally afforded every inmate. *Preclusion from access to those benefits* entails loss as grievous as that occasioned by their revocation, for the inmate's stake remains the same in each instance. *Cardaropoli v. Norton, supra,* at 995, n. 11 [emphasis added].

2. *See* the order of Justice Klein, Supreme Court, Bronx County, dated September 12, 1975 (Indictment No. 3247/1973), directing that the following statement be stricken from the probation report: "The Police Department have [sic] information indicating that the defendant has established connections with either the Genovese or Gambino Family of organized crime." Justice Klein granted Coralluzzo's motion to strike the above because the District Attorney's affidavit did not respond to the material allegations of the motion.

this disclosure soon enough to allow the parolee a meaningful opportunity to contest, mitigate or explain the evidence revealed. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'"

*Shepard, supra,* at 327.

In a somewhat different context, *Cardaropoli, supra,* required that an inmate must receive appropriate notice when Special Offender classification is contemplated by prison officials. The notice must specify the reasons for the proposed designation and provide a brief description of the evidence to be relied on: "In addition, the inmate is to be *fully informed* [at the time of his personal appearance before a disinterested decision-maker] *of the evidence against him . . . ."* *Cardaropoli, supra,* at 996 [emphasis added].

Only in *Billiteri v. United States Board of Parole,* 541 F.2d 938 (1976), has a Second Circuit panel reached a contrary conclusion. Citing *Haymes v. Regan, supra,* as support, the court found that a prospective parolee "has no such constitutional right to the information in the Parole Board's file, including but not limited to the presentence report and the examiner panel's report." *Billiteri, supra,* at 945. *Cf.,* Parole and Reorganization Act, P.L. 94–233, U.S.C.C.A.N. (1976) at 567 [18 U.S.C. § 4208(b) & (c)]. This court reads *Haymes* to direct only that disclosure of the Board's *release criteria* is not required by due process, so long as the

Board provides the inmate with both the grounds for the decision to deny parole and "the essential facts from which the Board's inferences have been drawn." *Haymes, supra,* at 544. *Haymes* thus speaks to the reasons requirement rather than to the notice and disclosure-of-adverse-evidence requirements of *Morrissey,* and presents no bar to the decision the court reaches in this case.

As the Supreme Court reiterated in *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), "the touchstone of due process is protection of the individual against arbitrary action of government." Disclosure to the inmate of the actual contents of his parole file puts him on full notice of the evidence against him and allows him a meaningful opportunity to meet this evidence. Incorporation of such a disclosure requirement into the MPI proceedings is a rational means designed to assure that an inmate is protected "from arbitrary and capricious decisions or actions grounded upon impermissible considerations." *Haymes v. Regan, supra,* at 544; *United States ex rel. Johnson v. Chairman, supra,* at 929; *Childs v. United States Board of Parole, supra,* at 1284.[3]

Defendants are directed to serve on the plaintiff and to file with the court within fifteen (15) days of this order an affidavit showing reasonable cause why any of the items in plaintiff's parole file should not be disclosed to him.

The time for holding the MPI hearing, as originally set by this court's order of Au-

---

**3.** The procedures followed in California for fixing an inmate's term of imprisonment and for granting parole closely parallel those followed in New York State. *See* California Penal Code, §§ 1168, 3020 and 5077. The California Supreme Court has recognized the need for disclosure to the inmate of information available to parole officials:

> From the inmate's point of view a policy of nondisclosure increases the potential for unfairness. Unless the prisoner learns what information is in the Authority's possession he cannot intelligently decide what subjects to discuss at his predisposition interview. (See § 5077.) Especially with respect to statements containing information which may be inaccurate and was not presented at

trial—either because the information was not sufficiently trustworthy, was not legally admissible or had not been obtained at that time—the inmate may have no knowledge of even the fact of the lodging of false or inaccurate charges. In such a situation a refusal to apprise him of the source and nature of all the information would effectively deny all reasonable opportunity to respond. " '[T]he stakes are simply too high . . . and the possibility for honest error or irritable misjudgment too great, to allow' " submission of such potentially damaging remarks without at least an opportunity to challenge them. *In re Prewitt,* 8 Cal.3d 470, 475, 105 Cal.Rptr. 318, 323, 503 P.2d 1326, 1331 (1972).

gust 6, 1976, is hereby extended. This hearing is to take place within sixty (60) days of the date of this order.

So ordered.