**Louis MARTINEZ, Plaintiff,**

v.

**Russell G. OSWALD, Commissioner of the Department of Correctional Services at Albany, New York and Ernest L. Montanye, Superintendent of the Attica Correctional Facility at Attica, New York, Defendants.**

**No. Civ–1973–580.**

United States District Court,
W. D. New York.

Jan. 10, 1977.

Herman Schwartz and Edward I. Koren, Amherst, N.Y., for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of N.Y., New York City (Douglas S. Cream, Buffalo, N.Y., of counsel), for defendants.

CURTIN, Chief Judge.

In August of 1972, plaintiff was transferred from the Attica Correctional Facility to the Great Meadow Correctional Facility. Plaintiff filed a petition in March of 1973 alleging a violation of 42 U.S.C. § 1983 by correctional officials Oswald and Montanye. The petition complained that the transfer was for punitive reasons, and that plaintiff was not afforded a hearing. In addition, plaintiff alleged that he was transferred for engaging in activities protected by the first amendment: making comments critical of the prison administration to the McKay Commission and the news media, and filing litigation against the administration. Plaintiff sought an injunction to return him to his former status at Attica, a declaration of the unlawfulness of his transfer, and an award of damages.

In August of 1973, plaintiff filed a supplemental affidavit in which he sought deletion from his institutional files of prejudicial matters relating to his behavior. Plaintiff was subsequently transferred back to the Attica Correctional Facility; his action proceeded on the question of restoration of the status quo ante transfer. Counsel for the plaintiff then filed a motion for summary judgment, followed by a supplementary motion (1) for partial summary judgment with respect to (a) the denial of a hearing prior to the transfer, and (b) the punitive nature of the transfer, and (2) for a trial of the remaining issues of fact.

The Supreme Court held in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), that no due process liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the state without a hearing, absent some right rooted in state law that he will not be transferred except for misbehavior, or upon the occurrence of other specified events. Under New York law, the transfer of inmates is not conditional upon or limited to the occurrence of misconduct. N.Y.Corr.Law § 23(1). Transfers are not listed among the punishments which may be imposed only after a prison disciplinary hearing. N.Y.C.R.R., Title VII, § 253.5. Therefore, under New York law, there is no basis for applying the protections of the Due Process clause to the transfer of a prison inmate.

As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Due Process clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive. *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano, supra.* It is therefore ordered that plaintiff's motion for partial summary judgment with respect to the denial of a hearing and the punitive nature of the transfer be denied.

This complaint alleges certain facts which, if proven, may show that the plaintiff was transferred for engaging in activities protected by the first amendment, including making comments critical of the prison administration and undertaking litigation against the administration.

A prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological goals of the corrections system. Thus, challenges to prison practices and restrictions that are asserted to inhibit first amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed. *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

Inmates, as individuals, do not have a personal constitutional right to communicate with the press. *Pell, supra.* However, once the right to a press interview is granted, the content of the communication is subject to the protection of the first amendment. The extent of this protection is, itself, subject to the legitimate policies of

the corrections system. In considering a first amendment challenge to mail censorship, the Supreme Court did not focus only on "prisoners' rights" because mail censorship implicates more than the right of prisoners. *Procunier v. Martinez,* 416 U.S. 396, 409, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). The Court turned for guidance to decisions dealing with the general problem of incidental restrictions on first amendment liberties imposed in furtherance of legitimate governmental activities, citing *Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ To discipline an inmate for the expression of his opinion to the press would, also, implicate more than the rights of prisoners. Under the *Procunier, Tinker* and *O'Brien* standards, the prohibition of the expression of a particular opinion, without evidence that it is necessary to avoid substantial interference with prison discipline, is not constitutionally permissible. It has been recognized, however, that extensive press attention to an inmate may result in his becoming a "public figure" within the prison society with a disproportionate degree of notoriety and influence among his fellow inmates. Because of this notoriety and influence, these inmates may become the source of disciplinary problems. *Pell v. Procunier, supra,* 417 U.S. at 831–832, 94 S.Ct. 2800. Conduct which materially disrupts the prison routine is, of course, not immunized by the constitutional guarantee of freedom of speech. If Martinez was transferred on the basis of the content of his communication with the press, rather than his disruptive behavior, he was transferred for engaging in activities protected by the first amendment. Although the Due Process clause does not itself mandate a transfer hearing, this transfer might be "otherwise violative of the Constitution," *Montanye v. Haymes, Meachum v. Fano, supra,* and, as such, subject to judicial oversight.

■ It is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed. *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The generous scope of discretion accorded prison authorities also heightens the importance of permitting free and uninhibited access by prisoners to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers. *Sostre v. McGinnis,* 442 F.2d 178 (2d Cir. 1971).

■ The filing of a lawsuit does not in itself prevent an administrative transfer. *Wells v. McGinnis,* 344 F.Supp. 594 (S.D.N.Y.1972). More of a factual predicate must be stated. Sufficient facts might include the allegation that the prison official threatened the inmate with a transfer if litigation were undertaken, *DeWitt v. Pail,* 366 F.2d 682, 684 (9th Cir. 1966), or that the timing of the sequence of events was such as to enable the court to draw an inference of intent to impede access to the courts. This complaint fails to allege sufficient facts from which such inference may be drawn.

In addition to his damage claim, plaintiff seeks deletion from his institutional files of prejudicial matters relating to his behavior because of the adverse effects this material may have on his parole opportunities.

In ruling that the Due Process Clause does not impose a nationwide rule requiring transfer hearings, the Supreme Court indicated that it was aware that "a record will be made of the transfer and the reasons which underlay it, thus perhaps affecting the future conditions of confinement, including the possibilities of parole." *Meachum v. Fano, supra,* at 229 n. 8, 96 S.Ct. at 2540. The Court was apparently unwilling to decide whether due process safeguards should be applied in establishing such records because it has yet to resolve the issue of whether parole release proceedings themselves are subject to due process requirements. *See Scott v. Kentucky Parole Board,* —— U.S. ——, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976) (remanded for mootness consideration).

While the Supreme Court has not yet reached this issue, this court and others have found that at least certain elements of due process do apply to parole release proceedings. *Coralluzzo v. New York State Parole Board,* 420 F.Supp. 592 (W.D.N.Y., decision filed Oct. 6, 1976); *United States ex rel. Johnson v. Chairman,* 500 F.2d 925 (2d Cir. 1974); *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *vacated as moot,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975); *Childs v. United States Board of Parole,* 167 U.S. App.D.C. 268, 511 F.2d 1270 (1974).

However, whatever process may eventually be due plaintiff, the mere presence of adverse information in his prison file does not necessarily result in a present deprivation of protected liberty sufficient to invoke due process safeguards. The complaint claims neither that evidence of mitigation may be lost if action to correct his record is not taken immediately, nor even that there is any additional evidence in this case whose value may be diminished by a delay.

In certain narrowly-defined contexts, an inmate may be entitled to due process protections with respect to the accuracy of information in his file and the impact of such information on his institutional classification. *See, e. g., Cardarpoli v. Norton,* 523 F.2d 990 (2d Cir. 1975). However, this entitlement must be balanced against recent Supreme Court decisions which have narrowly construed those instances in which state action carrying adverse consequences for prison inmates automatically activates due process rights. *Meachum v. Fano, supra; Moody v. Daggett,* —— U.S. ——, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

Plaintiff will be granted leave to file, within 45 days, an amended complaint which narrows his claims in accordance with this decision.

So ordered.