566 F.2d 375
 Ernest CORALLUZZO, Plaintiff-Appelleee,
v.
NEW YORK STATE PAROLE BOARD and Members of the New York
State Parole Board, Individually and in their
official capacities, Defendants-Appellants.
 No. 659, Docket 76-7517.
 United States Court of Appeals,
Second Circuit.
 Argued March 14, 1977
Decided July 28, 1977.
Certiorari granted Dec. 13, 1977.
 
 Mark C. Rutzick, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Kevin J. McKay, Deputy Asst. Atty. Gen., New York City, of counsel), for defendants-appellants.
 Philip B. Abramowitz, Buffalo, N. Y. (Robert C. Macek, Buffalo, N. Y., of counsel), for plaintiff-appellee.
 Before FEINBERG and TIMBERS, Circuit Judges, and DAVIS*, Court of Claims Judge.
 TIMBERS, Circuit Judge:
 
 
 1
 This appeal by the New York State Parole Board and its members from an order entered in the Western District of New York, John T. Curtin, Chief Judge, 420 F.Supp. 592, in a civil rights action by a state prisoner, presents for review under the due process clause of the Fourteenth Amendment another procedural aspect of the New York State parole system.
 
 
 2
 The procedure in question is the minimum period of imprisonment (MPI) hearing conducted pursuant to N.Y. Correction Law § 212(2) (McKinney Supp.1976).[1] We hold that the New York MPI procedure is subject to the due process clause of the Fourteenth Amendment; that the New York State Parole Board must provide a statement of reasons when it determines a MPI which exceeds the statutory minimum; and that under the particular circumstances of this case the prisoner must be granted access to the evidence in his file. We affirm.
 
 I.
 
 3
 For those prisoners subject to it, the MPI hearing is the threshold stage of the parole release process. Depending on the individual case, it results either in immediate release or in the scheduling of consideration for parole at some fixed date in the future. Specifically, when there has been imposed on a prisoner an indeterminate sentence but no minimum term, N.Y. Correction Law § 212(2) requires the New York State Parole Board to meet with him and review his file between nine and twelve months from the date he commenced his sentence. The Board then must "make a determination as to the minimum period of imprisonment to be served prior to parole consideration." Under the statute, in the case of a prisoner sentenced to an indeterminate term with no minimum, the Board may provide for a minimum period of incarceration as short as one year. Should it decide to set a longer minimum period, it subsequently may reduce the period initially fixed.
 
 
 4
 A MPI hearing was held in the instant case pursuant to the statutory directive. On February 28, 1975, upon a plea of guilty in the Supreme Court, Bronx County, to one count of criminal sale of a dangerous drug in the second degree in violation of N.Y.Penal Law § 220.35 (McKinney 1967), Ernest Coralluzzo was committed to the New York State Department of Corrections to serve an indeterminate sentence not to exceed fifteen years. N.Y.Penal Law § 70.00(1) (McKinney 1975). On January 15, 1976, he met with three members of the Parole Board at a MPI hearing. He requested release upon the expiration of the one year statutory minimum. After the hearing he received a form notice from the Board informing him that his MPI had been set at five years and that he would appear before the Parole Board in February 1980 for release consideration. No reasons for the decision were stated on the form notice. On March 3, 1976, twelve days after Coralluzzo commenced the instant action, the Board sent him a second notice which stated the following reasons for its decision:
 
 
 5
 "The case history makes it reasonable to conclude that this man's involvement in narcotics traffic is deep-rooted and high level. Permanent separation from drugs seems improbable for five years."
 
 
 6
 Coralluzzo contends that his involvement in the narcotics traffic was far from "deep-rooted and high level", and that the Board extrapolated this from erroneous statements in his prison file which asserted that he was involved with organized crime. We cannot say that this contention is altogether speculative. Coralluzzo obtained from the state court at the time he was sentenced an order striking from his probation report an unsupported reference to his connections with certain families of organized crime.
 
 
 7
 On February 20, 1976, Coralluzzo commenced the instant civil rights action pursuant to 42 U.S.C. § 1983 (1970). He sought a declaratory judgment that the MPI procedure had violated his due process rights and an order directing the Board to reconsider his application for release in a manner consonant with due process requirements. He contended, inter alia, that the Board improperly had failed to inform him of the reasons for its decision and the evidence upon which it had relied, and that the Board should have given him an opportunity to examine the evidence in his file. In an opinion filed August 6, 1976, as amended October 6, 1976, Chief Judge Curtin held that the Board's post facto statement of reasons was an insufficient remedy for its initial due process violation; he ordered the Board to grant a new MPI hearing to be followed with a statement of reasons; and he ordered the Board to "disclose to the plaintiff all of the evidence, in unabridged form, which may be considered against him, absent a showing of good cause for keeping the information secret." 420 F.Supp. 592, 596. From that order, the Board and its members have appealed.
 
 II.
 
 8
 In view of the claims of the parties and the decision of the district court, we are presented with the threshold question whether the prisoner has an interest at stake in the MPI determination sufficient to warrant due process protection. We hold that he does. This holding follows as a sequel to our decision in United States ex rel. Johnson v. Chairman, New York State Board of Parole, 500 F.2d 925 (2 Cir.), vacated as moot, 419 U.S. 1015 (1974). There, in light of the Supreme Court's decision applying the due process clause to parole revocation proceedings, Morrissey v. Brewer, 408 U.S. 471 (1972), we held that prospective parole entails a liberty interest commanding due process recognition. We stated, "Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration." 500 F.2d at 928. See Zurak v. Regan, 550 F.2d 86 (2 Cir.), cert. denied, --- U.S. --- (1977); cf. Williams v. Ward, 556 F.2d 1143, 1158-59 (2d Cir. 1977). The same interest in conditional freedom is at stake at a MPI hearing. As we said in Walker v. Oswald, 449 F.2d 481 (2 Cir. 1971), the MPI proceeding is "an integral part of the parole release process."[2] Moreover the statutory scheme holds out the possibility of immediate release at the MPI stage. At least with respect to the preliminary question of the applicability of due process, the MPI and parole release determinations are distinguishable in immaterial degree only, not in kind.
 
 
 9
 The Board contends that the MPI proceeding is materially different from the various parole release situations dealt with in our prior decisions because the prisoner, having no reason to expect "imminent liberty", presents only a "very tenuous" liberty interest. To be sure, the principal purpose of the § 212(2) procedure is to facilitate the scheduling of a later parole release hearing and as an incident of that to establish a minimum period of imprisonment. Depending on the individual case that minimum period may exceed one year. But we find no indication either in Johnson or in the Supreme Court's recent decisions dealing with liberty interests of prisoners, see Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Wolff v. McDonnell, 418 U.S. 539, 555-58 (1974); Morrissey v. Brewer, 408 U.S. 471, 480-82 (1972), that a substantial possibility of immediate release is the sine qua non of a cognizable liberty interest. To draw the constitutional line where the statistics show it to be more likely than not that the particular proceeding will result in immediate release could risk insulating from due process protection those stages of the parole release process which as a practical matter most seriously affect a prisoner's liberty interest.
 
 
 10
 The MPI hearing strikes us as involving precisely this type of liberty interest. It results in an effective minimum period of imprisonment. The statute provides the prisoner with no practical method of obtaining reconsideration by the Board until the arrival of the date it has set for the parole release hearing. The MPI hearing therefore may be the crucial component in the series of judicial and administrative decisions which combine to determine how long the prisoner remains incarcerated.
 
 
 11
 In view of these considerations, as well as the statutory possibility of immediate release, we hold that the MPI hearing affects a prisoner's liberty interest sufficient to warrant due process protection.[3]
 
 III.
 
 12
 We turn next to the two questions here presented regarding MPI hearing due process requirements: (1) whether the prisoner must be given a statement of the reasons for the Board's decision, including the essential facts upon which the Board's inferences are based; and (2) whether the prisoner must be given access to the evidence in his file.
 
 
 13
 (A) Statement of Reasons
 
 
 14
 The district court correctly required the Board to furnish a statement of reasons and facts, 420 F.Supp. at 596, in compliance with the standards we enunciated in Johnson, supra, 500 F.2d at 934. Here, as in a parole release determination, the inmate has a strong interest in the proceeding and the burden on the Board is comparatively insignificant. As we recently reemphasized in Zurak, supra, 550 F.2d at 95, "a requirement of a statement of reasons and facts is necessary to protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations." See also Haymes v. Regan, 525 F.2d 540, 544 (2 Cir. 1975).
 
 
 15
 The district court also correctly declined to accept the Board's belated statement of reasons, 420 F.Supp. at 595-96, as an effective cure for the constitutional deprivation committed by its initial act of summarily imposing a five year minimum period of incarceration. Johnson stressed that requiring a statement of reasons promotes thought on the decider's part and compels him to cover the relevant points and to eschew irrelevancies. 500 F.2d at 931. The belated statement here, a verbatim repetition of an internal communication made by the Board at the time of its initial decision, does not comply with the standard of thorough consideration suggested in Johnson.
 
 
 16
 The statement furnished here would have been inadequate even if it had not been belated. True, it did set forth the grounds of the Board's decision that Coralluzzo was involved heavily in drug traffic. But applying here the standards we formulated in Johnson, supra, 500 F.2d at 934, and Haymes, supra, 525 F.2d at 544, we hold that the Board was required to take the further step of stating the essential facts upon which it relied in reaching its decision. It is impossible to determine from the statement furnished by the Board whether it relied upon independent evidence of Coralluzzo's connections with organized crime or upon activities on the part of Coralluzzo aside from such connections.[4]
 
 
 17
 (B) Access To Evidence In File
 
 
 18
 Applying the three-pronged test formulated by us in Haymes, supra, 525 F.2d at 543, the district court held that the Board must disclose to the prisoner the actual evidence in his file at all MPI hearings. 420 F.Supp. at 595 n. 3, 596-99.
 
 
 19
 In so holding the district court did not have the benefit of our subsequent decision in Holup v. Gates, 544 F.2d 82 (2 Cir. 1976), cert. denied. sub nom. Gates v. DeLorenzo, 430 U.S. 941 (1977). There the prisoner claimed that "as a matter of constitutional law, any parole procedure which fails to allow every prospective parolee an inspection of his file in advance of that hearing . . . is a violation of the Fourteenth Amendment. . . ." 544 F.2d at 85. Under our Haymes test, resolution of that claim required a comparative assessment of the prisoner's need to see the materials and the burden on the State of examining and redacting the file of each prisoner. But the record in Holup lacked the facts necessary for that assessment. There was no showing of the extent to which the State's files were inaccurate or of the extent of materiality to the parole decision of any inaccuracies. As a result it was doubtful whether the disclosure demanded would be of any real use to the prisoners, 50% of whom received parole upon their first hearing in any event. Nor was it clear as to what administrative burden disclosure would place upon the State. Accordingly, since the record lacked "sufficient hard evidence" to permit application of the due process balancing test, we remanded for further proceedings. 544 F.2d at 87.
 
 
 20
 If we were disposed to formulate a general rule regarding a prisoner's access to evidence in his file in connection with MPI hearings, the record in the instant case would be no more suitable than that in Holup. Although Coralluzzo's claim of a factual error in his own file might be probative, 544 F.2d at 86, it is an unsatisfactory substitute for a showing of the frequency and gravity of the State's past errors. As for the State's interest, the instant record is barren of any hard facts regarding the burdens of undertaking disclosure and of redacting sensitive information.
 
 
 21
 With respect to the particular plaintiff, Coralluzzo, however, this case is distinguishable from Holup. There, by the time the case reached us only one of a number of initial plaintiffs remained to present a justiciable controversy and that plaintiff had not had a parole hearing. In the mooted cases, parole decisions had been made after notice had been given of the evidence upon which the parole board intended to rely and there were no claims of prejudice from any alleged lack of disclosure. Here, by contrast, Coralluzzo asserts a substantial claim that the Board relied upon erroneous information which had been stricken from his probation report by a state court order.
 
 
 22
 Due process is flexible and calls for such procedural protections as the particular situation demands, see, e. g., Morrissey v. Brewer, supra, 408 U.S. at 481; it often is "sensitive to what proves necessary in practice to a fair procedure. . . ." Williams v. Ward, supra, 556 F.2d at 1160 (2 Cir. 1977). (emphasis in original). Pursuant to this principle, we suggested in Williams that "there may . . . be circumstances where an inmate plausibly contends that the only way he can demonstrate reliance on an impermissible factor or can show a particular allegation concerning his record to be false . . . is by obtaining access to the detailed evidence in his file, albeit in a redacted form." 556 F.2d at 1160-61. We were not confronted with that situation in Williams because the prisoner there had not "suffered any prejudice from the lack of access to his files." Id. at 1160. He had known prior to his parole release hearing that his file contained the information which he later alleged to be false. But he took no steps to rebut at the hearing before the Board the facts in the file. Moreover, the Board included in its statement of reasons two substantial independent grounds for its decision. Id. at 1160-61.
 
 
 23
 This is an entirely different case. Coralluzzo has taken the initiative to purge his file of the information which he contends is false. The Board's statement of reasons permits the inference that the state court's order to strike the reference to organized crime in the probation report was disregarded. As a result, Coralluzzo presents a substantial factual contention regarding the basis for the Board's decision. Since disclosure of the file's contents is the only way this issue can be resolved, see id. at 1160, Coralluzzo's interest in disclosure is substantial enough to remove him from the undifferentiated class of prisoners subject to the MPI process and to grant him access to his file. Moreover, there will be no prejudice to the State in accommodating Coralluzzo. He apparently already has seen much of the material in his file. The Board, if necessary, can withhold material under the "good cause" exception in the district court's order. 420 F.Supp. at 596, 599.
 
 
 24
 We emphasize the narrow scope of our holding that the State must grant this prisoner access to his file. In applying the exception suggested in Williams to the peculiar facts of this case, we note that those facts have come to light only because the State, in however defective a manner, already has conducted a MPI proceeding. We join with Judge Friendly in Williams in "not wish(ing) to prejudge the issues left for examination in the Holup remand . . ." 556 F.2d at 1160.
 
 
 25
 Affirmed.
 
 
 
 *
 Hon. Oscar H. Davis, Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 We previously have held subject to the due process clause New York's parole release procedure, see United States ex rel. Johnson v. Chairman, New York State Board of Parole, 500 F.2d 925 (2 Cir.), vacated as moot, 419 U.S. 1015 (1974), and its procedure for conditional release of prisoners serving sentences of less than one year. See Zurak v. Regan, 550 F.2d 86 (2 Cir.), cert. denied, --- U.S. --- (1977). We also have clarified the requirements of the due process clause as applied to New York's parole revocation procedure. See United States ex rel. Carson v. Taylor, 540 F.2d 1156 (2 Cir. 1976)
 
 
 [2]
 In Walker, we equated parole release and MPI hearings for the purpose of holding that no right to counsel attaches at a MPI hearing
 
 
 [3]
 In so holding we reiterate the ruling of the state court in Festus v. Regan, 50 App.Div.2d 1084, 376 N.Y.S.2d 56 (4th Dept. 1975) (mem.)
 
 
 [4]
 This omission is particularly significant under the circumstances of this case. Coralluzzo obtained from the state court an order striking from his probation report an unsupported reference to his connections with organized crime. Any reliance by the Parole Board on this information in setting his MPI plainly was improper. Yet on the basis of the statement of reasons given, a reviewing court would not be in a position to determine whether the Board had relied on such information