David K. DUMSCHAT et al.

v.

**BOARD OF PARDONS OF the STATE OF CONNECTICUT et al.**

**Civ. No. H–76–102.**

United States District Court,
D. Connecticut.

Aug. 18, 1978.

Judith M. Mears, Washington, D. C., for plaintiffs.

Carl R. Ajello, Atty. Gen., Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

### Background

BLUMENFELD, District Judge.

This is a class action by the plaintiffs on behalf of themselves and all other inmates of the State of Connecticut who are currently serving sentences of life imprisonment at the Connecticut Correctional Institutions at Somers and at Enfield and who have been, or who will be, denied pardons during their current terms of incarceration by the defendant Connecticut Board of Pardons. The plaintiffs seek a declaratory judgment that the Due Process Clause of the fourteenth amendment to the United States Constitution entitles them to a written statement of reasons when they are denied pardons.

Plaintiff David Dumschat commenced the instant action in February 1976. At that time he was serving a sentence of life imprisonment at the Connecticut Correctional Institution at Enfield following a homicide conviction in 1964. Prior to February 1976, Mr. Dumschat had appeared before the Board of Pardons several times and had never been told why he had been denied a pardon.

On November 18, 1976, this court held an evidentiary hearing at which J. Bernard Gates, Chairman of the Connecticut Board of Parole, and Richard Lublin, then Chairman of the Board of Pardons, testified. Following additional submissions of written evidence by the defendants, on June 16, 1977, the court issued a declaratory judgment that Mr. Dumschat was entitled to a written statement of reasons when the board denied him a pardon. *Dumschat v. Board of Pardons*, 432 F.Supp. 1310 (D.Conn.1977). The defendants appealed the decision to the United States Court of Appeals for the Second Circuit. However, on June 16, 1977, Mr. Dumschat received a pardon. The defendants, therefore, did not pursue their appeal, but instead filed a mo-

tion with the Court of Appeals on August 16, 1977, requesting that the judgment of the District Court be vacated and that the case be remanded. On August 29, 1977, the defendants also filed a motion with this court to vacate the judgment and dismiss the complaint, and on September 13, 1977, the plaintiff consented to having the suit remanded to this court.

On December 20, 1977, while the two motions were pending, the plaintiff-intervenors, James Brown, Stanley Czaja, and James Shelton, filed a separate action claiming that their constitutional rights had been denied when the Board of Pardons denied them pardons without giving them statements of reasons. The three men were then, and are now, inmates at the Connecticut Correctional Institution at Enfield serving sentences of life imprisonment as a result of homicide convictions. Under the present sentences, Mr. Brown, Mr. Czaja, and Mr. Shelton will not be eligible for parole until 1987, 1982 and 1988 respectively. Conn.Gen.Stat. § 54–125, as amended P.A. 76–336 § 7 (June 9, 1976). Each of them has been denied a pardon by the Board of Pardons at least twice, with the latest denials for Mr. Brown and Mr. Shelton being in October 1977, and the latest denial for Mr. Czaja being in May 1977. At no time have any of the plaintiff-intervenors been told by any of the defendants why their applications for pardons have been denied.

In January 1978, the Court of Appeals remanded the *Dumschat* suit without further instructions. Following this court's denial of the defendants' motion to vacate the judgment and dismiss the complaint, the plaintiff-intervenors filed motions to intervene in *Dumschat,* to consolidate their action with *Dumschat,* and to have the consolidated suit certified as a class action. On March 9, 1978, an additional hearing was held at which the present Chairman of the Board of Pardons, Paul J. McQuillan, testified. After that hearing, the plaintiff-intervenors' motion to intervene, motion to have their cases consolidated with *Dumschat,* and motion for certification as a class action were granted.

## Discussion

In a previous round on the issue of whether the constitution required the Board of Pardons to give a written statement of reasons to an inmate when he was denied a pardon, this court ruled that a written statement of reasons for the board's decision, including the facts upon which it relied, was constitutionally mandated. See *Dumschat v. Board of Pardons, supra.* That holding was based upon a determination that in view of the evidence that 75 percent of the inmates sentenced to long minimum terms who have served a substantial portion of that sentence do eventually receive some form of pardon from the board, the particular plaintiff acquired a justifiable expectation of pardon and a liberty interest sufficient to invoke the protection of the fourteenth amendment. In that case, I stated:

"I need not decide on the facts of this case at what point in his incarceration an inmate acquires a justifiable expectation of pardon and a liberty interest sufficient to invoke the protection of the fourteenth amendment. I conclude only that due process attaches to the denial of a pardon to an inmate like Dumschat sentenced to life imprisonment who has served almost two-thirds of his minimum term."

*Id.,* 432 F.Supp. at 1315 n.17.

The present case is certified as a class action for all inmates currently serving sentences of life imprisonment in Connecticut state facilities at Somers and Enfield. Therefore, the question whether an inmate must have served a certain portion of his minimum term before he "acquires a justifiable expectation of pardon and a liberty interest sufficient to invoke the protection of the fourteenth amendment," must now be considered.

In *Coralluzzo v. New York State Parole Board,* 566 F.2d 375 (2d Cir. 1977), *cert. dismissed as improvidently granted,* 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 490 (1978), the Second Circuit decided the question whether the New York minimum period of imprisonment (MPI) procedure is subject to the Due Process Clause of the fourteenth amendment. In holding that due process rights were implicated in the MPI proceeding, the Second Circuit ruled that the parole board must provide a written statement of reasons, including facts relied upon by the board, when it sets a MPI that exceeds the statutory minimum.

In *Coralluzzo* the state attempted to distinguish the MPI proceeding from various parole release situations where the court had conferred due process protection, see *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Zurak v. Regan,* 550 F.2d 86 (2d Cir.), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). The state argued that because the prisoner has no reason to expect "imminent liberty," the MPI procedure implicates only a "very tenuous" liberty interest. The Court of Appeals said:

"[W]e find no indication either in *Johnson* or in the Supreme Court's recent decisions dealing with liberty interests of prisoners, see *Meachum v. Fano,* 427 U.S. 215, 224–25, [96 S.Ct. 2532, 49 L.Ed.2d 451] (1976); *Wolff v. McDonnell,* 418 U.S. 539, 555–58, [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974); *Morrissey v. Brewer,* 408 U.S. 471, 480–82, [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972), that a substantial possibility of immediate release is the sine qua non of a cognizable liberty interest. To draw the constitutional line where the statistics show it to be more likely than not that the particular proceeding will result in immediate release could risk insulating from due process protection those stages of the parole release process which as a practical matter most seriously affect a prisoner's liberty interest."

Therefore, because an inmate's liberty interest is seriously affected by the pardon procedure, I need not "draw the constitutional line" in the present action. In a pardon hearing of an inmate sentenced to life imprisonment, the Due Process Clause protects the inmate's interest in obtaining

512

reasons for denial of pardon irrespective of the time served on his sentence when his pardon application is considered.

After hearing the testimony of the present Chairman of the Board of Pardons, it appears that the conditions present at the time of my original decision on this matter continue to exist without interruption or change. Therefore, in all respect, I adhere to my prior decision in this matter and rule that the Connecticut Board of Pardons furnish any member of the plaintiff class a written statement of reasons and the facts relied on when he is denied a pardon.

SO ORDERED.