David DUMSCHAT, Plaintiff-Appellee,

James Brown, Stanley Czaja and James Shelton, Intervening Plaintiff-Appellees,

v.

BOARD OF PARDONS, STATE OF CONNECTICUT, and Richard K. Lublin (Chairman), Alvin Dozeman, Paul J. McQuillan, John P. Cotter, and Michael E. DuBissette, Members of the Board of Pardons, Defendants-Appellants.

James BROWN, Stanley Czaja and James Shelton, Plaintiffs-Appellees,

v.

BOARD OF PARDONS, STATE OF CONNECTICUT, and Paul J. McQuillan (Chairman), Alvin Dozeman, Michael E. DuBissette, John Speziale and Philip Tatoian, Members of the Board of Pardons, Defendants-Appellants.

Nos. 481, 482, Dockets 78–2124, 78–2125.

United States Court of Appeals, Second Circuit.

Submitted Nov. 16, 1979.

Decided March 20, 1980.

Carl R. Ajello, Atty. Gen. of the State of Connecticut, Hartford, Conn. (Stephen J. O'Neill, Asst. Atty. Gen., of counsel), for defendants-appellants.

Stephen Wizner, Yale Legal Services, New Haven, Conn. (Dennis. E. Curtis, Alice Bussiere and Judith Resnik, New Haven, of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and SMITH * and OAKES, Circuit Judges.

## PER CURIAM:

This case returns to us on remand from the United States Supreme Court. In our previous decision we affirmed, *per curiam*, the judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, Judge, that inmates serving life sentences in Connecticut prisons have a due process right to written statements from the state Board of Pardons explaining the denial of their applications for pardon. *See* 593 F.2d 165 (2d Cir. 1979). The Supreme Court vacated our judgment, 442 U.S. 926, 99 S.Ct. 2854, 61 L.Ed.2d 294 (1979), and remanded for reconsideration in light of *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

Upon reconsideration, we affirm our earlier conclusions that (1) the consistent issuance of pardons to inmates serving life sentences in Connecticut has given them a protected "liberty" interest in the pardons process, and (2) the due process rights which attend this protected interest require that life inmates receive written explanations of adverse decisions by the Board of Pardons. We remand to the district court to determine at what point in an inmate's incarceration the likelihood of his receiving a pardon becomes sufficiently great to vest him with a protected "liberty" interest and due process rights.

## I.

This action was commenced by plaintiff David Dumschat in February 1976. Dumschat was serving a life sentence following a 1964 homicide conviction, and, under state law, he was not eligible for parole until December 1983. Dumschat had appeared several times before the Connecticut Board of Pardons, which is empowered by statute to grant a life inmate his immediate release or to accelerate his eligibility for parole. Conn.Gen.Stat.Ann. § 18–26.[1] On each occasion, the board rejected Dumschat's application without written or oral explanation.

After rehearing testimony from officials of the pardon and parole boards, Judge Blumenfeld concluded that Dumschat had a protected liberty interest in the pardons process. *See* 432 F.Supp. 1310 (D.Conn. 1977). Accordingly, he issued a declaratory judgment holding that the Board of Parole violated Dumschat's due process rights when it failed to provide a written statement of reasons explaining its action.

On the very date that Judge Blumenfeld issued his decision, June 16, 1977, the Board of Pardons commuted Dumschat's sentence to time served, thereby granting him his immediate release. Nevertheless, Judge Blumenfeld denied the defendants' motion to vacate his judgment as moot.[2] Instead, he allowed three other life inmates to intervene and to consolidate their pending suit against the Board of Pardons with Dumschat's. The judge also granted the intervenors' motion to certify the consolidated suit

---

* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Chief Judge Kaufman and Judge Oakes. Judge Smith read the briefs in this case and voted before his death on February 16, 1980, to dispose of the case in the manner set forth in this opinion. He was unable to concur in the written opinion since it was drafted after his death.

1. The board is authorized to grant pardons "conditioned or absolute." Its members testified below that the board has never to their knowledge granted an inmate an absolute pardon, *i. e.*, a pardon releasing him unconditionally and absolving him of guilt in the crime for which he was imprisoned. (Such slate-cleaning pardons are occasionally issued to former inmates.) The board occasionally pardons an

inmate on time served. Such a commutation of sentence gives the inmate immediate, unconditional freedom but does not erase the underlying conviction. Favorable action by the board usually takes the form of a reduction in the inmate's minimum term. This type of "pardon" simply hastens the inmate's eligibility for parole; his release requires a favorable ruling by the Board of Parole.

2. The defendants appealed the original *Dumschat* decision to this court, then moved for us to vacate the district court judgment as moot and remand to Judge Blumenfeld with instructions to dismiss the complaint. We chose simply to remand without further comment or instructions.

as a class action, brought on behalf of all inmates serving life sentences in Connecticut state prisons. After a new round of hearings, Judge Blumenfeld expanded his original decision to encompass the new plaintiff class. The Board of Pardons, he ruled, must furnish a written statement of reasons whenever a life inmate is denied a pardon. 462 F.Supp. 509 (D.Conn.1978). This court affirmed his decision in a *per curiam* opinion. Our affirmance was then vacated by the Supreme Court and remanded with instructions to reconsider in light of the Court's recent decision in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, supra.*

## II.

In *Greenholtz*, the Supreme Court held that Nebraska state inmates were not constitutionally entitled to formal hearings before the Nebraska Board of Parole or to detailed written explanations of adverse parole decisions. The Court declared, first, that a state does not create a constitutionally cognizable liberty interest in parole release simply by establishing the possibility of parole. The "mere hope" of future freedom, without more, was deemed insufficient to invoke due process. *See* 99 S.Ct. at 2103–05. Analogizing to the standards for determining the existence of a protected property interest, as articulated in *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972), the Court indicated that the existence of a protected liberty interest in parole depends on whether inmates enjoy a "legitimate expectation" of parole release. 99 S.Ct. at 2103–05. The Court found that such an expectation was generated by Nebraska's statutory parole scheme and that "the expectancy of release provided in this statute is entitled to some measure of constitutional protection." *Id.* at 2105–06. The Court held, however, that this protection did not extend so far as to mandate formal hearings before the parole board or detailed explanations of parole rejections. *Id.* at 2106–08.

## III.

Our first task is to consider, in the wake of *Greenholtz*, whether Connecticut's life inmates have a protected interest in the pardons process. In *Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979), this court embraced the Supreme Court's declaration in *Greenholtz* that the establishment of a parole system does not in itself give rise to due process rights in parole procedures. Similarly, in *Pugliese v. Nelson*, 617 F.2d 916, (2d Cir. 1980), we acknowledged that *Greenholtz* required us to overrule our decision in *Cardaropoli v. Norton*, 523 F.2d 990 (2d Cir. 1975), which held that simply the threat of "grievous loss" was sufficient to trigger due process protection. Thus, we held that no liberty interest was implicated in a classification scheme that hindered an inmate's ability to participate in social furlough, work release, and halfway house programs.

■ An inmate's stake in the pardons process is essentially the same as his stake in parole, furlough, or work release: early release from incarceration. A state no more creates a protected interest by holding out the possibility of pardon, absolute or conditional, than it does by offering the possibility of parole or furlough. To prevail, therefore, Connecticut's life inmates must show more than a "mere hope" or subjective anticipation of pardon; they must, instead, show an expectation with some concrete, objective basis. *See Greenholtz, supra*, 99 S.Ct. at 2103–05; *Board of Regents v. Roth, supra*, 408 U.S. at 576–78, 92 S.Ct. at 2708–2709. As we stated in *Pugliese, supra*, at 922, to "qualify as constitutionally protected 'liberty', the prisoner's interest must be . . . one that he would normally expect to have as a matter of custom and practice."

In *Greenholtz*, the Supreme Court found that a constitutionally significant expectation of parole was created by the language of the Nebraska parole statute. It provided that the parole board "shall order" an inmate's release when he becomes eligible for parole in the absence of specific disqualifying conditions. *See* Neb.Rev.Stat. §§ 83–1,

114(1).[3] In marked contrast, Connecticut's pardons statute contains neither a presumption in favor of pardon nor a list of factors to be considered by the Board of Pardons. Instead, the statute grants the board unfettered discretion in the exercise of its power. *See* Conn.Gen.Stat.Ann. § 18–26.[4] The statute offers only the "mere hope" of pardon; it does not create a legitimate expectation of freedom and therefore does not implicate due process. *See Pugliese, supra,* slip op. at 1608; *Boothe, supra,* 605 F.2d at 664; *Wagner v. Gilligan,* 609 F.2d 866 (6th Cir. 1979). *Compare Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (inmates had protected liberty interest in "good-time" credits where statute provided that such credits were to be forfeited only for serious misbehavior).

■ Statutory or constitutional language, however, is not the only ground upon which a legitimate expectation of liberty or property may rest. Such an expectation, with attendant due process rights, may also be based on regulations, policies, understandings, contractual arrangements or institutional practices. *See Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth, supra,* 408 U.S. at 577–78, 92 S.Ct. at 2709; *Morrissey v. Brewer,* 408 U.S. 471, 480–82, 92 S.Ct. 2593,

2599–2600, 33 L.Ed.2d 484 (1972). As we emphasized in *Pugliese, supra,* at 922:

> Considerable weight is given to whether the alleged liberty interest is in the nature of a "bird in the hand" rather than one in the bush. A protected liberty interest is created, for example, where the inmate currently enjoys or may reasonably expect to enjoy an important and substantial benefit upon his compliance with or the occurrence of certain conditions, which may be withdrawn only for good cause.

■ Connecticut's life inmates contend that they have a legitimate expectation of pardon and release—and due process rights in pardon proceedings—by virtue of the regularity with which the Board of Pardons grants them relief. Though the statistical evidence provided below by state officials was not, as Judge Blumenfeld noted, "as extensive as might be desired," 432 F.Supp. at 1314, it was sufficient to establish that pardons are granted to Connecticut's life inmates with compelling frequency. Bernard Gates, then chairman of the Board of Parole, testified that more than 75 percent of Connecticut's "lifers" have their eligibility for parole accelerated by the Board of Pardons. Ninety percent of these inmates are then granted parole within their first year of eligibility, and all are paroled after no more than a few years' wait. In addition, the board grants immediate release to

**3.** The statute provides in pertinent part:
Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
    (a) There is a substantial risk that he will not conform to the conditions of parole;
    (b) His release would depreciate the seriousness of his crime or promote disrespect for law;
    (c) His release would have a substantially adverse effect on institutional discipline; or
    (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.
It was apparently the presumptive "shall order . . . unless" construction of the Nebraska statute which led the Supreme Court to conclude that its "unique structure and lan-

guage" gave rise to due process rights in parole proceedings. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). *See Boothe v. Hammock, supra,* 605 F.2d at 664.

**4.** The statute provides in pertinent part:
    (a) Jurisdiction over the granting of, and the authority to grant, commutations of punishment or releases, conditioned or absolute, in the case of any person convicted of any offense against the state and commutations from the penalty of death shall be vested in the board of pardons.
    (b) Said board shall have authority to grant pardons, conditioned or absolute, for any offense against the state at any time after the imposition and before or after the service of any sentence.

a number of other life inmates by commuting their sentences to time served.[5]

After reviewing these statistics, Judge Blumenfeld concluded that "the long-term inmate's expectation of pardon is a justifiable one rooted in state practice [and] implicates a liberty interest requiring due process protections." 432 F.Supp. at 1314. We affirmed this conclusion on appeal, holding that "[t]his almost invariable practice creates . . . a liberty interest in the pardons process," 593 F.2d at 166, and we reaffirm it now. The overwhelming likelihood that Connecticut life inmates will be pardoned and released before they complete their minimum terms gives them a constitutionally protected liberty interest in pardon proceedings. See Perry v. Sindermann, supra, 408 U.S. at 602–03, 92 S.Ct. at 2700 (state university professor had protected interest in continued employment if he could show that "the policies and practices of the institution" created an unwritten "common law" of tenure); Phillips v. Bureau of Prisons, 192 U.S.App.D.C. 357, 362, 591 F.2d 966, 971 (D.C.Cir.1979) ("consistent, positive action of government officials" allowing paralegals to visit prisoners gave paralegals a protected interest in such visits); Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361, 367 (9th Cir. 1976) ("we believe Roth recognized that rehire rates under some circumstances may evidence a 'common law of employment' to support the finding of a property interest"); Schwartz v. Thompson, 497 F.2d 430, 433 (2d Cir. 1974) ("[n]or is

there any suggestion that the vast majority of staff attorneys are promoted to supervisory positions so as to create de facto 'right' to such advancement"). We find nothing in Greenholtz that precludes this holding.[6] Indeed, our opinion in Pugliese appears to contemplate this precise result. See Pugliese, supra, at 962.

A finding that life inmates have a legitimate expectation of pardon and release prior to the expiration of their minimum terms does not mean, however, that they have a legitimate expectation of pardon after a year in prison, or two years, or ten. Connecticut's life inmates may apply for relief from the Board of Pardons after serving a year in prison and may apply annually thereafter. To determine how many years an inmate must serve before his application is entitled to due process protection, it is necessary to determine at what point inmates are vested with a protected interest in the pardons process, i. e., when the probability that they will receive pardon and release becomes constitutionally significant.

Judge Blumenfeld twice explicitly declined to reach this question. In his first opinion, he saw no need to fix a precise point at which due process was implicated because the suit involved a single plaintiff, Dumschat, who had already served more than two-thirds of his minimum sentence and who, therefore, clearly had a legitimate expectation of pardon based on state practice.[7] In his second opinion, the district

5. See note 1 supra. Gates also testified that "no more than 10 or 15 percent" of Connecticut's life inmates serve their minimum terms. This may mean that the Board of Pardons grants relief to 85 or 90 percent of the inmates; on the other hand, the figure may include those who have died in prison or who for some other reason served less than their minimum terms without the board's assistance.

6. The defendants-appellants point out that the Supreme Court in Greenholtz had before it figures showing that the Nebraska parole board awarded discretionary parole to nearly 60 percent of eligible inmates. If statistical probability were enough to create a protected interest in prison release, they assert the Supreme Court would have so found in Greenholtz. The Court's failure to do so, they submit, means that probability alone is insufficient to invoke

due process. This argument must be rejected. Greenholtz held that Nebraska inmates had a protected interest in parole proceedings because of statutory language. The Court, therefore, did not consider whether Nebraska's historical pattern of parole might also give rise to due process rights. The Court's silence on this issue—an issue which it had no need to reach and which had not been raised by the parties—is of no significance in this case.

7. Judge Blumenfeld remarked in a footnote that "it is not clear at exactly what point in their incarceration lifers generally receive a form of pardon." 432 F.Supp. at 1314 n.12. He then noted Bernard Gates's testimony that "I can't speak of it recently, but the bulk of commutations [for life inmates] over past years appeared to come between 14 and 17 years" of

court judge again found it unnecessary to reach the question because he held the mere possibility of pardon generated due process rights. This conclusion, of course, is no longer tenable in light of *Greenholtz, Boothe*, and *Pugliese*. We therefore remand to the district court to determine how many years life inmates must serve before the probability of pardon becomes so significant as to give rise to a protected liberty interest. Only after this period has elapsed are lifers entitled to due process safeguards in the pardons process.

## IV.

We turn, finally, to consider what procedural protection is due those life inmates in whom a liberty interest has vested. Specifically, we review, in light of *Greenholtz*, the district court's decision that a life inmate's due process rights require the Board of Pardons to provide a written explanation when it rejects his application for relief.[8]

■ Due process is a highly flexible doctrine. To determine what process is due in a particular case, a court must consider "the need for and usefulness of the particular safeguard in the given circumstances," Friendly, *Some Kind of Hearing*, 123 U.Pa. L.Rev. 1267, 1278 (1975), and its effect on governmental and private interests. *See, e. g., Greenholtz, supra*, 99 S.Ct. at 2106–08; *Mathews v. Eldridge*, 424 U.S. 319, 333–49, 96 S.Ct. 893, 901–909, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell, supra*, 418 U.S. at 560– 72, 94 S.Ct. at 2976, 2982; *Morrissey v.*

*Brewer, supra*, 408 U.S. at 483–89, 92 S.Ct. at 2601–2604. As we held in our previous opinion in this case, the record amply supports Judge Blumenfeld's conclusion that a mandatory statement of reasons has a number of salutary consequences. The need to give reasons encourages fair and thoughtful deliberations by the board, thus protecting against arbitrary and constitutionally impermissible decisions. Moreover, it promotes consistency, an important consideration in light of the board's frequent changes in personnel.[9] Finally, it helps inmates to correct misunderstandings by the board or to remedy their own behavioral or other problems which influenced the board's denial of relief.[10]

The record also supports Judge Blumenfeld's finding that a reasons requirement does not unduly burden the Board of Pardons. Indeed, the requirement involves only a small number of applicants before the board.[11] Further, the statements provided by the board need not be lengthy or detailed—the board should be able to summarize the grounds for its decision sufficiently in a sentence or two. Board chairman Paul McQuillan himself testified below that the reasons requirement would be workable and would present no great administrative difficulty.

Nothing in *Greenholtz* requires us to overrule Judge Blumenfeld's determination regarding the requirements of due process in this case. In fact, dicta in *Greenholtz* suggests support for Judge Blumenfeld's conclusion. The *Greenholtz* plaintiffs al-

---

imprisonment. This was the only testimony below concerning the timing of pardons. Accordingly, we remand to Judge Blumenfeld who can obtain additional information on this question.

8. In his complaint, Dumschat sought not only a statement of reasons from the board but also access to all information available to the board in its consideration of his applications. This additional relief was not granted by Judge Blumenfeld. The claim to access was dropped in the consolidated suit and class action and is no longer at issue.

9. Thirteen different people sat on the five-person board between November 1973 and November 1976.

10. On the benefits of a reasons requirement as a due process safeguard, *see generally, Wolff v. McDonnell*, 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974); *Haymes v. Regan*, 525 F.2d 540, 543–44 (2d Cir. 1975).

11. Thirty-five inmates were serving life sentences in Connecticut prisons as of November 1977. Moreover, only those who have served long enough to have a protected interest in pardon—a length of time to be determined by the district court on remand—have a right to statements of reasons from the board.

ready were entitled to brief statements of reasons from the Nebraska parole board. They contended that due process required more detailed statements outlining the evidence relied on by the board in reaching its decision. The Supreme Court held that a brief statement of reasons was sufficient under the due process clause, further suggesting that a brief statement was not only constitutionally sufficient but also constitutionally *necessary*:

> [W]hen parole is denied [the board] informs the inmate in what respects he falls short of qualifying for parole; *this affords the process that is due under these circumstances.*

99 S.Ct. at 2108 (emphasis added).

We hold that Connecticut life inmates who have a protected interest in the pardon process are entitled to the procedural safeguard which the Supreme Court considered "due" in *Greenholtz*—short statements of reasons explaining why they have been denied relief. We remand to the district court to determine at what point in their incarceration life inmates acquire a protected liberty interest in pardons.