**George D. VAN CUREN, Petitioner-Appellant,**

v.

**A. R. JAGO and William J. Brown, Respondents-Appellees.**

**No. 80–3351.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1980.

Decided Feb. 10, 1981.

Rehearing and Rehearing En Banc Denied March 26, 1981.

---

Louis A. Jacobs, Ohio State University, Columbus, Ohio, for petitioner-appellant.

Dennis L. Sipe, Asst. Atty. Gen. of Ohio, Columbus, Ohio, for respondents-appellees.

Before LIVELY and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

In deciding this appeal we determine what due process requirements must be met before a state parole authority may rescind its action granting parole to an inmate effective at a future date. The district court held that the petitioner, an inmate of an Ohio correctional facility, "had no constitutionally protectable expectation in early release, even under the unusual circumstances presented by this case." We reverse for the reasons hereafter set forth.

The facts are not in dispute. Van Curen was sentenced to not less than six nor more than 100 years incarceration on a guilty plea to two counts of embezzlement, four counts of forgery, three counts of uttering and publishing forged instruments and one count of obtaining money by false pretense. Under existing law he would have first become eligible for parole in March 1976. However, effective January 1, 1974, Ohio enacted a "shock parole" statute, Ohio Revised Code § 2967.31.[1] On April 17, 1974 a panel of the Ohio Adult Parole Authority (the OAPA or the Board) interviewed Van Curen and recommended that he be granted shock parole "on or after April 23, 1974, when arranged by the Division of Parole." The OAPA approved the panel's recommendation incorporating it in the minutes of its regular meeting. Van Curen was given immediate notice of the decision and a "Statement of Parole Agreement" which he signed, acknowledging that he understood the conditions of parole and that he agreed to observe and abide by them. The opening sentences of this statement were, "The Members of the Parole Board have agreed that you have earned the opportunity of parole and eventually a final release from your present conviction. The Parole Board is therefore ordering a Parole Release in your case." Van Curen attended and completed pre-release classes and was measured for civilian clothes.

At an April 23, 1974 meeting of the OAPA "special minutes" were adopted in which the Board rescinded its earlier grant of parole to Van Curen and continued his case to the June 1974 meeting. On June 20, 1974 parole was denied after a hearing. Van Curen brought a mandamus action against the OAPA. In that action the Supreme Court of Ohio held that no hearing

---

1. § 2967.31 Shock parole.

Notwithstanding any other provision for determining parole eligibility, a prisoner confined in a state penal or reformatory institution may be released on parole at any time after serving six months in the custody of the department of mental hygiene and correction, when all of the following apply:

(A) The offense for which the prisoner was sentenced was an offense other than aggravated murder or murder.

(B) The prisoner has not previously been convicted of any felony for which, pursuant to sentence, he was confined for thirty days or more in a penal or reformatory institution in this state or in a similar institution in any other state or the United States.

(C) The prisoner is not a dangerous offender as defined in section 2929.01 of the Revised Code.

(D) The prisoner does not need further confinement in a penal or reformatory institution for his correction or rehabilitation.

(E) The history, character, condition, and attitudes of the prisoner indicate that he is likely to respond affirmatively to early release on parole, and is unlikely to commit another offense.

was required for the parole authority to rescind an order granting parole at a future date where rescission occurred before release from confinement. *State ex rel. Van Curen v. Adult Parole Authority*, 45 Ohio St.2d 298, 345 N.E.2d 75 (1976). The Supreme Court of the United States denied an application for certiorari. 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). Van Curen then filed a petition for a writ of habeas corpus, which the district court denied. On appeal this court affirmed without opinion. 578 F.2d 1382 (1978). The Supreme Court granted certiorari, vacated the judgment and remanded the case to this court "for further consideration in light of *Greenholtz v. Inmates of Nebraska Penal Complex* [442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)] ...." 442 U.S. 926, 99 S.Ct. 2854, 61 L.Ed.2d 294 (1979). This court then remanded to the district court for "determination of whether petitioner, under the peculiar facts of this case, had a protectable entitlement to release under the Ohio shock parole statute, O.R.C. § 2967.31; and if such interest did exist, whether he was accorded adequate procedural due process safeguards."

Upon remand the district court found that Van Curen's grant of parole was rescinded because the OAPA received information that he had not been truthful before the panel or in his parole plan.[2] Van Curen was given no opportunity to be heard on the truthfulness of this information or to explain it before rescission. The district court concluded that under Ohio law there is no protectable interest in early release from imprisonment until release actually occurs. Since early release is entirely a matter of grace, a grant of parole may be revoked without a hearing at any time prior to release. The court treated the expectation of parole as a mere desire or hope for release and contrasted it with the expectation of continued liberty of one already released on parole.

At oral argument it was suggested by the respondent that this case is moot in view of the fact that Van Curen has now been paroled. Principal reliance for this contention rests on the decision of the Supreme Court in *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), where an action against a parole authority was held to be moot when the inmate was paroled. However, the fact which created mootness was not the inmate's release. Rather, the case became moot when this status "ripened into a complete release from supervision...." *Id.* at 148, 96 S.Ct. at 348. Since Van Curen remains under the supervision of the OAPA the present case is not controlled by *Weinstein*. We conclude that mootness has not been established and that the important constitutional issue presented by this appeal should be decided at this time.

Parole for Ohio prisoners lies wholly within the discretion of the OAPA. The statutes which provide for parole do not create a protected liberty interest for due process purposes. *Sharp v. Leonard*, 611 F.2d 136 (6th Cir. 1979); *Wagner v. Gilligan*, 609 F.2d 866 (6th Cir. 1979); *State ex rel. Newman v. Lowery*, 157 Ohio St. 463, 105 N.E.2d 643, *cert. denied*, 344 U.S. 881, 73 S.Ct. 176, 97 L.Ed. 682 (1952). Referring to Ohio's general parole statute, which does not differ in this respect from its shock parole statute, this court stated in *Wagner v. Gilligan, supra* at 867, "The statute does not mandate a presumption of parole release and, therefore, does not create a protected statutory entitlement to parole on which appellees can ground their due process claim." Thus, the present case may be distinguished from *Greenholtz, supra*, where the Supreme Court found that the Nebraska parole statute which mandates release in the absence of certain conditions is "unique in structure and language." 442 U.S. at 12, 99 S.Ct. at 2106. The expectancy of release provided by the Nebraska statute was found to be entitled

---

2. The evidence at the habeas corpus hearing disclosed that the Board had unverified information that Van Curen had embezzled $6,000,-000 rather than $1,000,000 as he had stated in his interview. The Board also had information that, contrary to Van Curen's statement in his parole plan, the person with whom he planned to live after release was not a relative.

to "some measure of constitutional protection." *Id.*

Petitioner concedes that the Ohio statute provides only a possibility of parole which creates no reasonable expectation of early release. However, he argues that once a parole determination has been made its rescission is more like a revocation of parole than an original parole determination. The Supreme Court held in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that certain procedural requirements must be met before parole may be revoked. Petitioner argues that the same due process requirements should have been met in the present case. Petitioner points out that he had far more than a mere desire for release. He had been told that he had "earned the opportunity of parole and eventually a final release," that the parole board was "ordering a Parole Release in your case," and he had signed the statement of parole agreement. He argues that he had acquired a protected interest in a parole which had been granted but had not yet taken effect; it was not necessary that he be released before his interest in parole became entitled to constitutional protections. The rescission was based on a determination that he had falsified information, a question of fact upon which he was entitled to notice and a hearing.

Petitioner also argues that his expectancy of early release was based on past practice and custom of the OAPA. The person who was chairman of the OAPA when petitioner's parole determination was rescinded testified by deposition that the Board rescinded approximately 25 or 30 paroles of the six to ten thousand granted each year during his three year term. Since more than 99 percent of Ohio inmates who are granted parole are actually released without having their paroles rescinded, petitioner contends he had a justifiable expectation of release based on state custom and practice. This expectation is a "liberty" interest which the state may not take away without observing procedural due process requirements, he asserts, citing *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The respondents argue that since the Ohio statute so clearly creates no legitimate expectancy of early release the district court properly denied habeas corpus relief. Responding to petitioner's argument, the respondents assert that *Morrissey v. Brewer, supra*, which dealt with revocation of parole after release, is not controlling. Two distinctions are noted between parole rescission and parole revocation: (1) parole revocation deprives the parolee of a liberty already obtained while rescission at most denies a conditional liberty merely desired; (2) revocation depends on a retrospective factual determination with the attendant risk of error in the absence of a hearing while rescission remains a purely subjective determination. Under Ohio law, O.R.C. § 2967.01(E), parole is defined as release from confinement by the OAPA. Until the time of release, respondents contend, an inmate has nothing more than a hope, certainly not an entitlement to an early end to incarceration. Even if a hearing were held prior to rescission of a parole determination, no set of facts could be established which would require release under Ohio law. That decision, unlike the one at issue in *Greenholtz*, remains purely discretionary.

■ Our previous judgment was vacated and remanded for reconsideration in light of *Greenholtz v. Inmates of Nebraska Penal Complex, supra*. Though *Greenholtz* was decided on the basis of a particular statute, the Court's opinion deals more generally with the criteria for entitlement to due process in the parole setting. To determine whether the due process clause applies a court must inquire into the nature of the interest which is affected by government action. The Constitution is not implicated where a state deprives a person of something for which he has no more than an abstract need or desire, or a unilateral expectation. "He must, instead, have a legitimate claim of entitlement to it." 442 U.S. at 7, 99 S.Ct. at 2103. Applying these principles to parole, the *Greenholtz* Court held that a state law which holds out the mere

possibility of parole provides no more than a hope for early release and creates no liberty interest within the meaning of the due process clause.

In reaching this conclusion the Court noted the differences between a purely discretionary decision to grant parole and a fact-related determination to revoke parole once granted. An obvious difference is that the already paroled individual is enjoying the relative freedom of the "outside" while an applicant for parole is incarcerated. A second difference lies in the nature of the decision to be made in each case. In parole revocation the first decision is whether the parolee has actually violated the terms of parole. This is a "wholly retrospective factual question," *id.* at 9, 99 S.Ct. at 2104, involving none of the predictive judgments involved in an initial parole determination. On the other hand, the initial parole-release decision "is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Id.* at 9–10, 99 S.Ct. at 2104–2105. Thus, *Morrissey v. Brewer, supra,* does not control the parole-release decision where a state authority has unfettered discretion.

■ It is not the parole-release decision which petitioner questions, however. It is the action of the Board which rescinded a previous grant of parole. Is parole rescission more like the grant of a parole or more like a parole revocation? It clearly contains elements of both. Since the inmate has not yet been released, the parole authority is still engaged to a certain extent in a subjective and predictive determination. Nevertheless, the same authority has previously made the "more subtle" decision in favor of release and the decision to rescind must necessarily depend, at least to some extent, on a "retrospective factual determination." We do not believe that the nature of the decisions involved in parole rescission places such determinations clearly within the ambit of either revocation or initial release.

Rather it is necessary to determine in each case whether an inmate's hope for parole has ripened into a "legitimate claim of entitlement."

It seems clear to this court that Van Curen had a great deal more than an abstract desire or unilateral expectation of early release. In *Perry v. Sindermann, supra,* the Supreme Court found a legitimate claim of entitlement on the basis of state rules or "mutually explicit understandings." 408 U.S. at 601, 92 S.Ct. at 2699. A nontenured professor at a public university was held entitled to a hearing on the university's decision not to renew his contract after 10 years in the state system. The university had no tenure policy, but fostered an understanding that there would be job security after seven years of teaching. In *Bills v. Henderson,* 631 F.2d 1287 (6th Cir. 1980), this court found that a prison's guidelines for administrative segregation created a legitimate claim of entitlement to freedom from such segregation. Notice and a meaningful hearing are required before a person may be removed from the general prison population and placed in administrative segregation. The court specifically recognized that "[l]iberty interests can be created by state rules or mutually explicit understandings as well as by statute." (at 1291). *Compare Durso v. Rowe,* 579 F.2d 1365, 1369 (7th Cir. 1978).

■ Upon consideration of the entire record this court concludes that Van Curen had a liberty interest which was based upon a mutually explicit understanding. Having been notified that he "ha[d] been paroled" and that "the Board is ordering a Parole Release in your case," he had a legitimate expectation that his early release would be effected. This expectation was a liberty interest, the deprivation of which would indeed constitute a grievous loss. It was an interest which could not be taken from him without according petitioner procedural due process.

We do not reach this conclusion on the basis of cases from jurisdictions which have rules or guidelines that establish entitlement to parole or permit rescission under

narrowly defined circumstances. *E. g., Christopher v. U. S. Board of Parole,* 589 F.2d 924 (7th Cir. 1978); *Drayton v. McCall,* 584 F.2d 1208 (2d Cir. 1978); *but see, Sexton v. Wise,* 494 F.2d 1176 (5th Cir. 1974), (all cases involving parole of federal prisoners). There is no evidence that Ohio has such rules or guidelines. Nor do we base our decision on the evidence that less than one percent of Ohio's parole grants are rescinded. *Cf. Dumschat v. Board of Pardons,* 618 F.2d 216 (2d Cir.), *cert. granted,* —— U.S. ——, 101 S.Ct. 266, 66 L.Ed.2d 127 (1980). This evidence related to paroles generally and there was no proof directed specifically to shock parole, the comparatively new Ohio method of release involved in the present case. Rather, the decision is based on the facts of this case which lead ineluctably to the conclusion that acts of the OAPA created a protected liberty interest in Van Curen.

■ Having determined that due process safeguards were required in the present case, we now consider what process was due. The flexibility of the due process requirement has been stressed many times. What process is due depends on the nature of the interest involved. It seems clear that all the procedures prescribed for parole revocation in *Morrissey v. Brewer* are not required for rescission. A parole grantee who has not been released has not yet acquired a liberty which "includes many of the core values of unqualified liberty." *Morrissey,* 408 U.S. at 482, 92 S.Ct. at 2601. Rather, such a person, though still an inmate, has acquired a conditional liberty interest similar to that of the Nebraska inmates in *Greenholtz.*

■ The uncontradicted evidence showed that the OAPA has no further role in parole release after its minutes are signed approving a panel recommendation, unless the inmate is involved in "negative institutional conduct" or new disqualifying information is brought to light. A decision on either of these bases would be necessarily fact-related. We conclude that due process requires an opportunity for the parole grantee to be heard after reasonable notice of the Board's

intention to consider rescission. The notice should state the reason for the decision to consider rescission, and should disclose the information on which the decision is based, though sources of the information need not be disclosed in the notice. This will enable the inmate to prepare for the hearing. At the hearing the inmate must be permitted to testify and to file affidavits and documentary evidence. The hearing will be held either by the OAPA or a panel thereof. If the Board rescinds parole it must state in writing the reasons for its action and the evidence relied upon, though formal findings of fact are not required.

These procedures will make the hearing meaningful and will provide protection from arbitrary actions. We believe they will serve the interests of all parties, including society's "interest in treating the parolee with basic fairness: fair treatment . . . will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Morrissey v. Brewer,* 408 U.S. at 484, 92 S.Ct. at 2602.

The judgment of the district court is reversed.

PHILLIPS, Senior Circuit Judge (dissenting).

I respectfully dissent. I agree that the better practice would have been for the Ohio Adult Parole Authority to have conducted a hearing before rescinding Van Curen's contemplated parole. *See Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972). However, I do not agree that the Fourteenth Amendment required such a hearing under the facts of this case.

In *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), the Supreme Court said: "[T]he sufficiency of a claim of entitlement must be decided by reference to state law." *Cf. Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979).

Under Ohio law, Van Curen had "no claim of entitlement." The State Adult Parole Authority had the right, at any time

before Van Curen was released, to rescind its previous action granting parole.

In *State ex rel. Newman v. Lowery,* 157 Ohio St. 463, 464, 105 N.E.2d 643 (1952), *cert. denied,* 344 U.S. 881, 73 S.Ct. 176, 97 L.Ed. 682 (1952), the Supreme Court of Ohio said: "The question of parole of prisoners being in the discretion of the Pardon and Parole Commission, that commission had authority to rescind its order of March 9, 1950, granting a parole effective on or after a future date."

In *Morrissey v. Brewer, supra,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), which involved the revocation of parole after the release of the prisoner, and not, as in the present case, the rescission of an action by parole authorities before release, the Supreme Court said: "The question is . . . whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." The Court examined the nature of parole revocation and found that:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked. (Footnotes omitted.) 408 U.S. at 482, 92 S.Ct. at 2600.

The emphasis of the foregoing quotation is upon the rights of the prisoner to a due process hearing before revocation of his parole after his release. Because of the difference between the nature of parole revocation and parole recission, I do not agree with the majority opinion that Van Curen had a liberty interest within the meaning of the fourteenth amendment.

In *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. at 12, 99 S.Ct. at 2106, the Supreme Court said:

> [W]e emphasis that this [Nebraska] statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.

The Ohio statute, quoted in footnote 1 of the majority opinion, is not the same as the Nebraska statute applied in *Greenholtz.* As interpreted by the Supreme Court of Ohio, Van Curen did not, in my opinion, have "a legitimate claim of entitlement" to parole. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Therefore, I would affirm the judgment of the district court.